MORRIS *against* PHELPS.

THIS was an action of *covenant.* The declaration contained two counts. The first count was on a deed, dated 1st *January*, 1795, whereby the defendant, in consideration of 20,000*l.* conveyed to the plaintiff, 67,953 acres of land, and among which were two tracts in township No. 2. in the first range of townships in *Ontario;* the one containing 3,360 acres and the other, 1,600 acres, both described by metes and bounds. In the deed the defendant covenanted, that he was seised in fee of all the premises, without any charge or incumbrance whatever, and that he had good right to convey, &c. The second count was on a deed, dated 10th *April*, 1792, whereby the defendant, in consideration of 2,000 dollars, conveyed to the plaintiff, 2,000 acres of land, in township No. 2. aforesaid, with the like covenant of seisin, &c. The *breach* assigned was, that the defendant was not seised of the premises so conveyed, nor had good right to convey them as aforesaid.

The cause was tried at the *Ontario* circuit, the 17th *June*, 1807.

At the trial, the plaintiff gave in evidence the two deeds from the defendant. He admitted that the defendant, on the 10th of *May*, 1790, had a title to the whole of township No. 2. in which the lands lie ; and gave in evidence a deed from the defendant to *Caleb Gardner*, and five other persons, dated, the 10th of *May*, 1790, for the whole of the said township.

The defendant then gave in evidence a deed, dated the 15th of *March*, 1792, from the said *Gardner* and others (*Peleg Gorton* excepted) to the defendant, for the two tracts of land mentioned in the first count, and also a deed from the said *Peleg Gorton* to the defendant, dated the 4th of *April*,1792,for the tract mentioned in the second count. The defendant also offered in evidence, a deed

*In an action on the covenant of seisin in a deed, the defendant is not allowed to give in evidence a title acquired by him, subsequent to bringing the action; but the rights of the parties must be determined according to their existence and extent, at the time when the action was commenced.*

*If A. conveys land to B. with covenant of seisin, &c. and the title to part only of the land fails, the sale will not be rescinded, so as to give the vendee a right of action to recover back the whole consideration money : but the plaintiff is only entitled to recover damages in proportion to the extent of the defect of title, or the value of the part lost;and the measure of damages is the value of the part for which the title has failed, taken in proportion to the price of the whole.*

NEW YORK,
Nov. 1809.

MORRIS
v.
PHELPS.

from the heirs of *Peleg Gorton* (he being dead) to *Caleb Gardner*, and the four other persons, of all the right of the said heirs to the lands mentioned in the first count. This deed was dated the 13th of *June*, 1807, *and subsequent to the commencement of this suit.* He also offered in evidence a deed from *Caleb Gardner*, and the four others, to the heirs of *Peleg Gorton*, conveying to them their title to the 2,000 acres, mentioned in the second count, and dated also the 13th of *June*, 1807. These two deeds were rejected by the judge, as inadmissible evidence, being executed since the commencement of the suit. The defendant then offered to prove, that the lands mentioned in the first count, were of *inferior quality* to the residue of the lands conveyed by the first mentioned deeds, and that damages ought to be assessed, in proportion only to the value. This evidence was overruled, and the judge decided, that the plaintiff was entitled to recover such a proportion of the consideration money, with interest, as the lands mentioned in the first count bore to all the lands conveyed by the deed; and that the defendant was entitled to recover on the second count, the full consideration in the deed, mentioned in the second count, with interest.

The plaintiff then produced a deed from *Gabriel Furman*, and *William Steele*, and their wives, to the defendant, dated 6th *June*, 1807, *reciting*, that the plaintiff did by deed, dated 8th *April*, 1795, sell to them the two tracts in township No. 2. and granted to the defendant by *Gardner* and others, by deed, dated 15th *March*, 1792, containing 3,360 acres, and 1,600 acres; also, 2,000 acres in the said township, granted to the defendant by *Peleg Gorton*, by a deed, dated 4th *April*, 1792, and reciting that it had been discovered that there was a defect of title in the said lands, and a suit had been brought by the plaintiff against the defendant, of whom he purchased, and which suit was then pending, and reciting, that the said grantors, desirous of obtaining a reimbursement

of the monies paid by them to the plaintiff, for the said lands, had agreed to reconvey the said lands to the defendant, he repaying to the plaintiff, the consideration received for the same, with interest; and the grantors accordingly released to the defendant, all the said three tracts. The deed contained covenants, that neither they, (*Steele* or *Furman*,)nor the plaintiff, had done any thing to alter or change the title, but that the defendant should hold the same as they had done; and that they would warrant and defend the same unto the defendant, against them and the plaintiff. The plaintiff then proved, that on the day previous to the trial, he tendered the said deed to the defendant, and that the same was refused by him.

The jury found a verdict for the plaintiff for 10,944 dollars damages, being the full consideration with interest, for the three tracts set forth in the declaration.

A motion was made for a new trial, and the following points were raised for the consideration of the court:

1. Whether the release from the heirs of *Peleg Gorton*, to *Gardner* and others, and the release from *Gardner* and others, to the heirs of *Gorton*, ought not to have been admitted in evidence; and if so, whether any and what damages ought to have been allowed to the plaintiff.

2. Whether the evidence respecting the lands in the first count ought not to have been received; and if so, whether the sum recovered ought not to have been for the amount of the value of the last-mentioned land, with interest, and no more.

3. Admitting the evidence offered by the defendant to have been properly overruled, whether the plaintiff ought to recover more than one-sixth of the consideration and interest, for the two tracts mentioned in the first count, and five-sixths of the consideration and interest, for the tract set forth in the second count.

*E. Williams*, for the plaintiff. The issue joined was on the covenant of seisin; the only evidence pertinent to

this issue, was as to the fact of seisin, at the time the deed from the defendant to the plaintiff was executed. That the defendant acquired the seisin after the present suit was brought, could not affect the plaintiff's right to recover, and the deeds subsequently obtained were not admissible, unless with a view to diminish the damages; and in that case it ought to be shown, that they were beneficial to the plaintiff.

As the defendant must have known, that he had no title when he executed the deeds to the plaintiff, it is perfectly reasonable that the contract should be rescinded, and the consideration money with interest refunded. If the plaintiff cannot recover more than the consideration money and interest, he ought not to recover less; he has a right to full damages for the whole land; he ought not be obliged to accept a good title to a part, when there is no title to the other part; for the very part which is lost, may have been the principal inducement to the purchase. In *Farrer* v. *Nightingal*,* where the defendant had sold a leasehold interest, for eight years and a half, and it turned out that his interest in the premises was for six years only, Lord *Kenyon* said, that the purchaser had a right to consider the contract at an end, and to bring his action for money had and received, to recover back what he had paid. The plaintiff was entitled to the whole land; he is not bound to accept a good title to a part, and a bad or defective title for the other part.

*Henry*, contra. It is agreed, that on the 10th of *May*, 1790, the defendant had a good title to five-sixths of one tract, and one-sixth of the other tract; and that in *June*, 1807, he obtained a title for the *one-sixth* of one tract, and the *five-sixths* of the other, so as to perfect his title to the whole. Though the title was made complete, subsequent to the commencement of the plaintiff's action, yet it was good evidence in mitigation of damages. But the

*2 *Esp.* Cases,
639.

# OF THE STATE OF NEW-YORK.

material question here is, whether the plaintiff can recover damages for any more than the value of that part of the land, for which there is a failure of title ; or can rescind the contract, and recover for the whole. Where a contract is executed, and a part proves good and a part defective, the vendee cannot rescind the contract, even in a court of equity. The part to which the title is good, may be extremely valuable, while that to which there is no title, may be of little or no value. If the plaintiff recovers damages for the whole land, on this covenant of seisin, the title will not revert to the grantor. On a recovery on a writ of *warrantia chartæ*, the land conveyed is revested in the grantor; but that proceeds on a total failure of title. The recovery of damages for the whole property, therefore, was clearly wrong.

Again, the defendant ought to have been allowed to show that the land for which the title was defective, was of an inferior quality or value, to the residue ; and that value should be taken as the measure of damages, and not the proportion of the consideration money, taken according to the quantity of acres in that part. This is the only equitable and just rule.

KENT, Ch. J. delivered the opinion of the court. This action is for a breach of the covenants of seisin, contained in two separate deeds.

In one of them, the defendant, for a large consideration, conveyed three tracts of land, when as to two of those tracts, he had only a right to an undivided part ; and in the other deed, for a valuable consideration, he conveyed one tract when he had a right only to an undivided part of it.

Upon the trial, the defendant offered to show that the lands to which the title in part failed, in the first deed, were of inferior quality to the other lands mentioned in the deed, and this evidence was rejected. He also offered in evidence deeds executed a few days before the trial,

to the persons under whom he held when he conveyed to the plaintiff, with a view to confirm the title, and this evidence was rejected. A verdict was taken for the whole consideration given for the lands, of which the title to part only had failed.

The questions arising upon this case are respecting the competency of the evidence offered, and the true rule and measure of damages.

1. The deeds of *June*, 1807, were properly rejected. They were executed only a few days before the trial, and the rights of parties must be determined according to the existence and extent of those rights, when the action is commenced. (2 *Saund.* 171. c. 3 *Term Rep.* 186. 4 *East*, 507.)

2. The other points in the case merit more attention. They depend upon the exposition and application of principles of general importance.

The fee of five-sixths of the two tracts, particularly mentioned in the first count in the declaration, may, for any thing that appears to the contrary, reside in the plaintiff ; the defendant had a title to such proportions of those tracts when he conveyed them, and that title must have actually passed by the deed. The plaintiff has never offered to rescind the sale ; nor if he had, do I perceive how it would have availed him, in a court of law ; since the contract was executed, and part of the consideration fulfilled. I am not aware that even a court of equity, in *England*, has ever undertaken to rescind a sale, because the title to a part of the property failed ; though I admit there may be cases in which it would be extremely just ; and that the doctrine prevails in countries under the influence of the civil law. The case of an exchange of land is an exception, at the common law ; for there if *A.* give in exchange three acres to *B.* for other three acres, and afterwards one acre is evicted from *B.* in this case all the exchange is defeated, as the exchange is upon a *condition* in law, that the title to each part shall remain entire ; and

it is the office of a condition to defeat the whole and not a part. (Bustard's case, 4 Co. 121. b.) The case of an exchange and of a partition depend upon this implied condition, which seems not to have been extended and applied to other assurances of land. But without pursuing this point further, or giving any definitive opinion of the court on the general question, it is sufficient to observe, that there was nothing in this case to authorise the plaintiff to go for the whole consideration, because the title to part failed. That fact alone did not rescind the sale, after the deed was delivered, and the consideration paid. The plaintiff was entitled to recover damages only in proportion to the extent of the defect of title. This is an old and well settled rule of damages ; thus in the case of *Beauchamp* v. *Damory*, (*Year Book*, 29 E. III. 4.) it was held by *Hill*, J. that if one be bound to warranty, he warrants the entirety ; but he shall not render in value, but for that which was lost. In 13 E. IV. 3. (and which case is cited in *Bustard's* case,) the same principle was admitted ; and it was declared and agreed to by the court, that in exchange, where a want of title existed as to part, the party evicted might enter as for a condition broken, if he chose ; but if he sued to recover in value, he should recover only according to the value of the part lost. Though the condition be entire and extends to all, yet it was said that the warranty upon the exchange might severally extend to part. So in the case of *Gray* v. *Briscoe*, (*Noy*, 142.) B. covenanted that he was seised of *blackacre* in fee, whereas in truth it was copyhold land, in fee, according to the custom ; and the court said that the jury should give damages according to the difference in value, between fee-simple land and copyhold land. There is then no law or reason why the plaintiff should recover more than one-sixth of the consideration money and interest, for the two tracts mentioned in the first count, and five-sixths of the consideration money and interest, for the tract contained in the second count.

Another question in the case is, whether the defend-
ant ought not to have been permitted to show that the
lands in the deed of 1795, of which there was a failure
of title, were of inferior quality to the other lands con-
veyed by the same deed. This appears to be reasonable;
and the rule would operate with equal justice as to all the
parties to a conveyance.   Suppose a valuable stream of
water with expensive improvements upon it, with 10 acres
of adjoining barren land, was sold for 10,000 dollars;
and it should afterwards appear, that the title to the
stream with the improvements on it failed, but remained
good as to the residue of the land, would it not be unjust,
that the grantee should be limited in damages, under
his covenants, to an apportionment according to the num-
ber of acres lost, when the sole inducement to the purchase
was defeated; and the whole value of the purchase had
failed? So on the other hand, if only the title to the nine
barren acres failed, the vendor would feel the weight of ex-
treme injustice, if he was obliged to refund nine-tenths of
the consideration money.   This is not the rule of assess-
ment. The law will apportion the damages to the measure
of value between the land lost, and the land preserved.
This doctrine is laid down as an elementary rule in *Po-
thier's* treatise on the contract of sale. (*Traité du contrat
de vente*, No. 99. 139. 142.) He says, that an eviction
of part of the thing sold, not only gives an action on the
warranty; but the purchaser will recover a proportion of
the price paid, in a *ratio* to the amount of the part from
which he was evicted; and that if the eviction be of an
integral part of the estate sold, as for instance, of a mead-
ow or vineyard belonging to the farm, the damages must
be assessed, according to a valuation of the price of the
meadow or vineyard, and the proportion which it bears
to the price of the whole estate.   Nothing can be clear-
er than the equity of this rule.

The same principle is to be met with in the civil law.
*Bonitatis æstimationem faciendam, cum pars evincitur.*

And *Ulpian* puts and answers this question ; *quid enim, si, quod fuit in agro pretiosissimum, hoc evictum est ; aut quod fuit in agro vilissimum ? æstimabitur loci qualitas, et sic erit regressus.* (*Dig.* 21. 2. l. 1. l. 13. and l. 64. § 3. The recovery in value upon the warranty at common law, was regulated by the same rule. The *capias ad valentiam* was issued to take as much land of the warrantor as was equal to *the value* of the lands lost. *Cape de terra in balliva tua ad valentiam tantæ terræ quod B. clamat ut jus suum ;* and if the lands of the warrantor lay in another county, different from that in which the lands in controversy lay, then the lands in question were first appraised by a sheriff's inquest, and afterwards, the writ went to the sheriff of the other county, to take lands of equal value, which value was specified in the writ. (*Bracton*, 384. a. b.) If the recovery in the present case had been of an undivided part of all the lands conveyed by the deed, then the rule of apportionment of damages, according to the relative value, could not have applied ; and this distinction runs through the authorities on the subject. But the plaintiff's title failed only to an undivided part of a specified tract, and remained good to another and larger tract, conveyed by the same deed and included in the same consideration. The apportionment according to the relative value is therefore strictly and justly applicable.

The court are accordingly of opinion, that the verdict be reduced and regulated according to these principles ; and if this cannot be done by agreement of the parties, a new trial is awarded, with costs to abide the event.

Rule granted, <em>ut supra.</em>